IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAÚL A. PONCE RODRÍGUEZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 19-1567 (MEL)

**OPINION AND ORDER**

**I.    Procedural and Factual Background**

Pending before the court is Mr. Raúl A. Ponce Rodríguez's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 16. On January 30, 2012, Plaintiff filed an application for Social Security benefits alleging that he became unable to work due to disability on February 1, 2009 ("the onset date"). Tr. 21.[1] Plaintiff's disability claim was denied on March 27, 2012, and upon reconsideration. Id. Thereafter, Plaintiff requested a hearing which was held on March 23, 2015, before Administrative Law Judge Peter Kimball. Tr. 21, 58, 555. On May 8, 2015, Judge Kimball issued a written decision finding that Plaintiff was not disabled because he could perform his past work as a marker. Tr. 565-66.

Thereafter, Plaintiff requested review of Judge Kimball's decision. The Appeals Council granted Plaintiff's request for review and remanded the case with instructions to determine whether the job of marker qualifies as past relevant work, and if warranted, to proceed to step

---

[1] "Tr." refers to the transcript of the record of proceedings.

five of the sequential process and determine whether significant jobs exist in the national economy that Plaintiff can perform. Tr. 21-22, 572-75.

On January 8, 2018, Plaintiff appeared at a hearing before Administrative Law Judge Shirley Ann Marzan ("the ALJ"). Tr. 22, 33, 41-55. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 24. It was also determined by the ALJ that Plaintiff's relevant past work was limited to electronics assembler. Tr. 31, 49. On February 28, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 33. Subsequently, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-3. Plaintiff filed a complaint on June 10, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 16, 22.

**II.     Legal Standard**

    **A. Standard of Review**

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security

Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ

concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 24. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease at the cervical and lumbar spine, carpal tunnel syndrome, and affective disorder. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours in an 8-hour workday, stand for 3 hours with standing/walking combined in an 8-hour workday and walk for 3 hours with standing/walking combined in an 8-hour workday. He can frequently reach overhead to the left and frequently reach overhead to the right. For all other reaching, he can reach frequently to the left and reach frequently to the right. He can handle items frequently with the left hand and can handle items frequently with the right hand. He can finger frequently with the left hand and finger frequently with the right hand. He can feel frequently with the left hand and feel frequently with the right hand. He can climb ramps and stairs frequently; never climb ladders, ropes or scaffolds; balance frequently; stoop occasionally; kneel occasionally; crouch occasionally and crawl occasionally. He can work at unprotected height[s] occasionally and around moving mechanical parts occasionally. He can operate a

motor vehicle occasionally. Mentally, he can perform simple and routine tasks, make simple work-related decision[s] and tolerate few changes in a routine work setting. He can frequently interact with supervisors, frequently interact with coworkers and occasionally interact with [the] public.[2]

Tr. 27. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform his past relevant work as an electronics assembler. Tr. 31. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. Tr. 31-32. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: battery inspector, assembler production worker, and shipping and receiving weigher. Tr. 32, 50. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 33.

**III.     Legal Analysis**

Plaintiff objects to the ALJ's final decision denying disability benefits on four grounds. First, Plaintiff alleges that the ALJ erred in finding that fibromyalgia was not a medically determinable impairment. ECF No. 16, at 25-27. Next, Plaintiff claims that the ALJ did not properly consider his mental impairments and Tourette syndrome at step two of the sequential process. Id. at 19-21. It is also alleged by Plaintiff that the ALJ's RFC determination is not supported by substantial evidence. Id. at 23-25. Lastly, Plaintiff contends that the ALJ's step five determination that he can perform work in the national economy is not supported by substantial evidence. Id. at 27.

---

[2] The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See Social Security Ruling ("SSR") 83–10, 1983 WL 31251, at *6.

**A. Whether Fibromyalgia Constitutes a Medically Determinable Impairment**

Plaintiff argues that the ALJ erred in finding that fibromyalgia was not a medically determinable impairment. ECF No. 16, at 25-27. Under the regulations, a medically determinable impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "Fibromyalgia is defined as '[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.'" Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2009) (citation omitted). The Commissioner has promulgated rules regarding the analysis of fibromyalgia claims. In order to establish a medically determinable impairment of fibromyalgia,

> [a] licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia].

SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Furthermore, a showing of fibromyalgia under the 1990 American College of Rheumatology ("ACR") Criteria requires evidence of "a history of widespread pain," "at least 11 positive tender points on physical examination," and "evidence that other disorders that could cause the symptoms or signs were excluded." See id. at *2-3. Alternatively, under the 2010 ACR Diagnostic Criteria, a claimant must show "a history of widespread pain," "repeated manifestations of six or more [fibromyalgia] symptoms," and "evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occuring conditions were excluded."[3] Id. at *3.

---

[3] Fibromyalgia symptoms may include "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms." SSR 12-2p, 2012 WL 3104869, at *3 n.9.

7

In March 2012, examining rheumatologist Dr. Noemi Varela Rosario ("Dr. Varela") found that Plaintiff suffered from chronic muscular skeleton pain and that the clinical pattern was suggestive of fibromyalgia. Tr. 243, 1108. In February 2013, Dr. Varela found that there was no evidence suggesting the presence of inflammatory arthritis or lupus. Tr. 242, 1107. In her decision, the ALJ determined that fibromyalgia was not a medically determinable impairment because the fibromyalgia diagnosis from Dr. Varela did not satisfy the accepted diagnostic criteria. Tr. 25. The ALJ noted that Dr. Varela's diagnosis of fibromyalgia did not reference tender points and there was no longitudinal treatment for Dr. Varela to diagnose fibromyalgia because the consultation came as a result of a referral. Id. Plaintiff has not cited to any evidence showing that he had at least eleven tender points on physical examination or that he had manifestations of six or more fibromyalgia symptoms. Thus, the ALJ properly concluded that Plaintiff's alleged fibromyalgia was not a medically determinable impairment.[4] See Dias v. Colvin, Civ. No. 15-13003, 2018 WL 988053, at *9 (D. Mass. Feb. 20, 2018) ("A fibromyalgia diagnosis by a doctor, alone, does not satisfy a claimant's burden of proving fibromyalgia as a medically determinable impairment.").

### B. The ALJ's Step Two Determination

Plaintiff argues that the ALJ did not properly consider his mental impairments and Tourette syndrome at step two of the sequential process. ECF No. 16, at 19, 20, 24-27. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. See

---

[4] Having determined that fibromyalgia was not a medically determinable impairment, the ALJ was not required to discuss limitations resulting from fibromyalgia in assessing Plaintiff's RFC. See SSR 96–8p, 1996 WL 374184, at *2 (explaining that "in assessing RFC, the [ALJ] must consider only limitations and restrictions attributable to medically determinable impairments.").

López-González v. Comm'r of Soc. Sec., 59 F. Supp. 3d 372, 378 (D.P.R. 2014) (citing 20 C.F.R. § 404.1520(c)). The step two severity requirement imposes a de minimis burden, which is designed to screen out groundless claims. McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986).

Plaintiff argues that the ALJ erred in not finding that Tourette syndrome was a severe impairment. ECF No. 16, at 20. In September 2012, consultant psychiatrist Dr. Hazel A. Toledo Espiet ("Dr. Toledo") examined Plaintiff and diagnosed him with Tourette syndrome. Tr. 1089. Plaintiff was also diagnosed with Tourette syndrome in October 2013 by treating neurologist Dr. José Acevedo Batista ("Dr. Acevedo") and in March 2014 by treating psychiatrist Dr. Ronald Malavé Ortiz ("Dr. Malavé"). Tr. 409, 1209-1210, 1299. However, the ALJ noted that the record failed to show any limitations attributed to Tourette syndrome. Tr. 25.

Plaintiff has not discredited the ALJ's finding by citing to record evidence indicating that Tourette syndrome significantly limited his ability to perform basic work activities. The diagnoses of Tourette syndrome, without more, is insufficient to establish it as a severe impairment. See Krawczak v. Comm'r of Soc. Sec., Civ. No. 14-11281, 2016 WL 3792858, at *4, 8 (E.D. Mich. June 13, 2016) (finding that the Commissioner's step two determination that a claimant's Tourette syndrome was non-severe was supported by substantial evidence where there was not "any evidence in the record or any opinion by a physician that [the claimant's] Tourette syndrome caused any limitations."); Morrison v. Colvin, Civ. No. 14-104, 2015 WL 3466219, at *1-3 (E.D. Ark. June 1, 2015) (affirming the Commissioner's decision that the claimant was not disabled where Tourette syndrome was found to be a non-severe impairment at step two of the sequential process); Dewey v. Colvin, Civ. No. 14-30032, 2015 WL 1476764, at *2 (D. Mass.

9

Mar. 31, 2015) ("a mere diagnosis of a medical condition is not sufficient to unequivocally establish that a 'severe' impairment exists, as defined by the regulations.").

Plaintiff also contends that the ALJ erred in considering his mental impairments at step two. ECF No. 16, at 19. In her decision, the ALJ found that Plaintiff had a severe affective disorder. Tr. 24. Plaintiff argues that the ALJ erred by not finding that his severe impairments included a recurrent major depressive affective disorder; major depression disorder with psychotic features; and generalized anxiety disorder. In September 2012, Dr. Toledo diagnosed Plaintiff with major depression disorder with psychotic features and generalized anxiety disorder. Tr. 1087-90. In March 2014, Dr. Malavé diagnosed Plaintiff with a recurrent major depressive affective disorder. Tr. 1299. Plaintiff's argument that the ALJ erred at step two by not finding that major depressive affective disorder and major depressive disorder with psychotic features were severe impairments is incorrect. The ALJ determined that Plaintiff had a severe affective disorder which encompasses the diagnoses of major depressive disorders. See Coleman v. Saul, Civ. No. 18-325, 2019 WL 4576271, at *3 (S.D. Ala. Sept. 20, 2019) (explaining "that the ALJ's finding of affective disorder as a severe impairment encompassed the totality of [plaintiff's] mental disorders" which included diagnoses of major depressive disorder and major depressive disorder with psychotic features.); Williams v. Colvin, Civ. No. 13-701, 2015 WL 9094803, at *2 n.3 (W.D.N.C. Dec. 16, 2015) ("Major depressive disorder is a type of affective disorder."). While the ALJ did not find that generalized anxiety disorder constituted a severe impairment, Plaintiff has not carried his burden of citing to record evidence indicating that his generalized anxiety disorder significantly limited his ability to perform basic work activities. See Merced v. Astrue, Civ No. 10-1253, 2012 WL 1110599, at *5 (D.P.R. Mar. 30, 2012) ("For an impairment

to be severe, it must significantly limit a claimant's ability to perform basic work activities.") (citing 20 CFR § 404.1520(c)).

Moreover, even if the ALJ erred in classifying Plaintiff's mental impairments at step two, any error was harmless because the effects of Plaintiff's mental impairments were considered through the remainder of the sequential evaluation process. See Mahnke v. Comm'r of Soc. Sec. Admin., Civ. No. 16-770, 2018 WL 4442265, at *4 (W.D.N.Y. Sept. 17, 2018); Mendez-Rodríguez v. Comm'r of Soc. Sec., Civ. No. 18-1782, 2020 WL 4673360, at *7 (D.P.R. Aug. 11, 2020) ( "Errors at step two are generally harmless if the ALJ continued the sequential analysis because of the presence of another severe impairment.").

### C. The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 16, 23-25. The ALJ is responsible for determining a claimant's RFC based on all the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

#### 1. The ALJ's Mental RFC Determination

The ALJ thoroughly considered the medical evidence and opinions of record regarding Plaintiff's mental impairments in determining his mental RFC finding. The ALJ noted that in September 2011, Plaintiff visited the APS Clinics of Puerto Rico ("APS Clinics") and was diagnosed with Tourette syndrome and major depressive affective disorder. Tr. 30, 240. Plaintiff, however, displayed logical thought process and adequate affect, introversion, and judgment. Tr.

11

240. Subsequent progress notes from the APS Clinics revealed similar findings.[5] Tr. 232, 234, 238. The ALJ noted that Plaintiff was assessed with global assessment of functioning ("GAF") scores of 60 to 70 at the APS Clinics.[6] Tr. 232, 234, 237, 238, 240.

In September 2012, Dr. Toledo diagnosed Plaintiff with major depression disorder with psychotic features, Tourette syndrome, and generalized anxiety disorder. Tr. 1089. Dr. Toledo found that Plaintiff was oriented in all spheres, displayed logical, coherent, and relevant thought process, and showed adequate judgment. Tr. 1088-89. Dr. Toledo also found that Plaintiff had normal immediate memory but showed some difficulty with recent and remote memory. Id. Dr. Toledo assessed a GAF score of 50.[7] Tr. 1089. The ALJ assigned little weight to Dr. Toledo's opinion because it was inconsistent with her clinical findings and the other record evidence. Tr. 30.

Plaintiff argues that the ALJ erred in assigning little weight to Dr. Toledo's opinion. ECF No. 16, at 22-23. "Social Security Ruling ("SSR") 96-8p directs that ALJs, during the RFC determination, 'must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'" Harrison v. Saul, Civ. No. 20-10295, 2021 WL 115308, at *5 (D. Mass. Mar. 26, 2021) (quoting SSR 96-8p, 1996 WL 374184, at *7). "The ALJ analyzes the

---

[5] These progress notes refer to Plaintiff's treatment at the APS Clinics in December 2011, February 2012, and March 2012.
[6] These progress notes refer to Plaintiff's treatment at the APS Clinics in September 2011, December 2011, February 2012, March 2012, and August 2012. "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults." Sánchez Rosa v. Comm'r of Soc. Sec., Civ. No. 18-1506, 2019 WL 3202683, at *3 n.2 (D.P.R. July 16, 2019) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)). "A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.'" Id. "A GAF of 61 to 70 reflects mild symptoms such as depressed mood, or some difficulty in social, occupational, or school functioning." Mercado v. Comm'r of Soc. Sec., Civ. No. 12-1388, 2013 WL 5315763, at *1, n.4 (D.P.R. Sept. 20, 2013).
[7] "A GAF score ranging from 41 to 50 indicates 'serious symptoms' or any 'serious impairment in social, occupational, or school functioning.'" Sánchez Rosa, 2019 WL 3202683, at *3 n.2.

opinions of state agency consultants, treating sources, and examining sources under the same rubric." Bean v. Berryhill, Civ. No. 17-265, 2019 WL 277592, at *2 (D.N.H. Jan. 22, 2019). "When determining the weight to give to a medical opinion, an ALJ must consider, *inter alia*, the nature of the relationship between the medical source and the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source of the opinion is a specialist." Freddette v. Berryhill, Civ. No. 2019 WL 121249, at *5 (D.N.H. Jan. 7, 2019) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

The ALJ reasonably assigned little weight to Dr. Toledo's opinion because it was inconsistent with her clinical findings and the record evidence. Tr. 30-31. The ALJ noted Dr. Toledo's diagnosis of major depression disorder with psychotic features was inconsistent with her clinical findings that Plaintiff presented "no delusions" and that he did "not seem to be responding to any internal stimuli." Tr. 1088. The ALJ also noted that there was no evidence of perpetual disturbances in the record. Tr. 30-31. Plaintiff has not cited to any record evidence discrediting the ALJ's finding that there was no evidence in the record of perpetual disturbances. Furthermore, the ALJ found that Dr. Toledo's opinion was contrary to progress notes from the APS Clinics where Plaintiff was assessed with GAF scores of 60-70 indicating moderate to mild impairments.[8] Tr. 30, 232, 234, 237, 238, 240, 289.

In March 2014, Dr. Malavé diagnosed Plaintiff with Tourette syndrome and recurrent major depressive affective disorder. Tr. 409, 1299. Dr. Malavé found that Plaintiff was oriented

---

[8] These progress notes refer to Plaintiff's treatment at the APS Clinics in August 2011, September 2011, December 2011, February 2012, March 2012, and August 2012. Plaintiff argues that the ALJ should have expressed how much weight was assigned to APS Clinics. ECF No. 16, at 21. However, "[a]n ALJ need not assign a specific weight to a medical opinion, so long as the Court is able to discern the ALJ's reasoning." Daily v. Comm'r of Soc. Sec., Civ. No. 14-1559, 2016 WL 1128136, at *6 (N.D.N.Y. Feb. 29, 2016). Here, it is clear from the ALJ's description that she viewed Dr. Toledo's GAF score of 50 as inconsistent with the six occasions that Plaintiff was assessed with GAF scores of 60 to 70 at the APS Clinics. See Hodge v. Berryhill, Civ. No. 16-974, 2017 WL 3425680, at *3 (D.N.M. Aug. 9, 2017) ("so long as the weight is implicit or the Court is otherwise able to follow the ALJ's reasoning, the ALJ's failure to invoke certain phraseology does not amount to reversible error.").

in all spheres and had logical thought process. Tr. 407-08. Dr. Malavé opined that Plaintiff showed intact memory, good judgment, and adequate introspection and concentration. Tr. 408. Subsequent progress notes from Dr. Malavé revealed similar findings.[9] Tr. 387-405.

The ALJ also noted that medical expert psychiatrist Dr. Ramón Fortuño Ramírez ("Dr. Fortuño") reviewed the record evidence and testified at the March 23, 2015 hearing that Plaintiff had good responses to the medication prescribed at the APS Clinics. Tr. 31, 77-78, 84. Dr. Fortuño opined that Plaintiff could understand, remember, and carry out simple instructions but carry out detailed instructions only frequently. Tr. 83. Dr. Fortuño also opined that Plaintiff could interact with the public occasionally and interact with supervisors and coworkers frequently. Tr. 83.

Plaintiff argues that the ALJ did not consider Tourette syndrome in the RFC analysis. ECF No. 16, at 20. Plaintiff's argument cannot prosper as the ALJ specifically referenced Plaintiff's diagnoses of Tourette syndrome by the APS Clinics and Dr. Toledo. Tr. 30-31. Plaintiff has not identified any evidence that Tourette syndrome imposed greater functional limitations than those found by the ALJ. The ALJ appropriately considered the medical evidence and opinions of record and her mental RFC determination is supported by substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

### 2. The ALJ's Physical RFC Determination

Plaintiff also alleges that the ALJ's physical RFC determination is not supported by substantial evidence. ECF No. 16, at 23-25. However, the ALJ reasonably considered the

---

[9] These progress notes refer to Dr. Malavé's treatment of Plaintiff in June 2014, September 2014, and December 2014.

medical evidence in the record to find that Plaintiff could perform a range of light work. In March 2009, examining radiologist Dr. Ramón Pizarro ("Dr. Pizarro") opined that an MRI of the lumbar spine showed a small left paracentral intervertebral disc herniation at L5-S1 with extruded fragment. Tr. 939. In December 2011, treating general practitioner Dr. Gail González Corchado ("Dr. González") completed a functional capacity evaluation where she diagnosed Plaintiff with cervical and lumbar radiculopathy, depression, Hashimoto's disease (thyroid), thyroiditis, and thyroid nodules. Tr. 963. Dr. González noted that Plaintiff had upper and low back pain that worsened when sitting or standing for long periods of time. Id. Dr. González opined that Plaintiff was capable of sitting for thirty minutes at a time for a total of two hours in an eight-hour workday. Tr. 964. It was also opined by Dr. González that Plaintiff was capable of standing for thirty minutes at a time and standing/walking for a total of two hours in an eight-hour workday. Id. Dr. González found that Plaintiff could lift and carry ten pounds rarely. Tr. 965. Dr. González also found that Plaintiff did not have significant limitations with reaching, handling, or fingering. Tr. 966.

The ALJ assigned little weight to Dr. González's opinion regarding Plaintiff's limitations and capacity to work because it was inconsistent with her clinical findings and other record evidence. Tr. 29; see Lozada-Miranda v. Comm'r of Soc. Sec., Civ. No. 18-1410, 2020 WL 4671838, at *6 (D.P.R. Aug. 11, 2020) ("the opinion of a treating physician need not be given controlling weight where the ALJ determines that it is inconsistent with the other substantial evidence in [the] case record." (citing 20 C.F.R. § 404.1527(c)(2)). In March 2011, Dr. González opined that Plaintiff had good tolerance for standing, sitting, and walking. Tr. 149, 950. In January 2013, examining neurologist Dr. Alfredo Pérez Canabal ("Dr. Pérez") opined that Plaintiff had 5/5 strength, no atrophy, and adequate motor and sensory functions. Tr. 1094.

Dr. Pérez assessed Plaintiff with a normal gait and found that he did not use any assistive devices. Tr. 1098. In March 2013, treating general practitioner Dr. César Traverso Rivera ("Dr. Traverso") examined Plaintiff and opined that he had full range of motion in the extremities and a normal gait. Tr. 377. Dr. Traverso also opined that Plaintiff had good muscle strength and no weakness or atrophy. Id.

The ALJ also noted that Dr. González's opinion was inconsistent with the imaging studies in the record. Tr. 29. In January 2013, examining radiologist Dr. Ana M. Suárez Lozada ("Dr. Suárez") opined that x-rays of the cervical and lumbar spine were normal. Tr. 1104. Dr. Suárez also opined that intervertebral disc spaces were intact, sacroiliac joints were unremarkable, and no fractures or dislocations were seen. Id. In July 2014, examining radiologist Dr. Manuel Prats Vega ("Dr. Prats") opined that an MRI of the lumbar spine revealed mild lumbar scoliosis, narrowing present at the L5-S1 intervertebral space, and bilateral facetal joint effusions at L4-L5 level. Tr. 1226. However, Dr. Prats also opined that there was no stenosis of the spinal canal and normal intervertebral foramina. Id.

In March 2012, Dr. Varela noted that Plaintiff suffered from chronic muscular skeletal pain which suggested a process of centralized pain such as fibromyalgia. Tr. 243, 1108. In January 2013, Dr. Pérez diagnosed Plaintiff with cervical myositis, carpal tunnel syndrome, low back pain, and Tourette syndrome. Tr. 1095. Dr. Pérez found that Plaintiff had tenderness to palpation in the head, neck, and back and was limited upon flexion at the cervical and lumbar spine. Tr. 1094, 1101. It was also found by Dr. Pérez that Plaintiff had positive Phalen's and Tinel's tests. Tr. 29, 1096. However, Plaintiff had no pain, tenderness, or swelling in the hands. Tr. 1096. Dr. Pérez opined that Plaintiff had full 5/5 muscular strength in both hands and could perform all hand functions (grip, grasp, pinch, finger tap, button shirt, pick up a coin, and write).

16

Id. The ALJ assigned partial weight to Dr. Pérez's opinion as it did not include a function-by-function assessment of Plaintiff's limitations or capabilities. Tr. 29.

In February 2013, Dr. Varela opined that there was no evidence that Plaintiff suffered from rheumatoid arthritis or lupus. Tr. 242, 1107. At the hearing on March 23, 2015, medical expert internist Dr. José Rolón Rivera ("Dr. Rolón") reviewed the record evidence and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. Tr. 71. Dr. Rolón opined that Plaintiff could sit for six hours but only walk and/or stand for three hours in an eight-hour workday. Tr. 71. Dr. Rolón found that Plaintiff had manipulative limitations due to his positive Tinel's and Phalen's tests. Tr. 73. Dr. Rolón opined that Plaintiff could frequently reach overhead and he was limited to fingering and handling only occasionally. Tr. 73.

The ALJ assigned partial weight to Dr. Rolón opinion. Tr. 30. The ALJ determined that the manipulative limitations assessed by Dr. Rolón, which were based on positive Phalen's and Tinel's tests, were inconsistent with other evidence in the record. Id. The ALJ noted that while Plaintiff demonstrated positive Phalen's and Tinel's tests, Dr. Pérez found that he had intact 5/5 muscular strength in both hands and was able to grip, grasp, pinch, finger tap, button shirt, pick up a coin, and write. Tr. 30, 1096. Dr. Pérez also found that Plaintiff did not have joint pain, swelling, or tenderness. Id. The ALJ noted that there was no further evidence indicating carpal tunnel syndrome in the record. Tr. 30.

Plaintiff argues that the ALJ "ignored [Dr. Rolón's] limitation without having another medical opinion refute them." ECF No. 16, at 24. Plaintiff also argues that because carpal tunnel syndrome was determined to be a severe impairment at step two, the ALJ was required to adopt Dr. Rolón's opinion that he was limited to handling and fingering only occasionally. Id. Here, the ALJ reasonably found that the manipulative limitations assessed by Dr. Rolón were

17

inconsistent with Dr. Pérez's opinion. Tr. 30. Furthermore, the mere fact that carpal tunnel syndrome was determined to be a severe impairment at step two does not mean that the ALJ was required to adopt Dr. Rolón's manipulative limitations. See Gunderson v. Astrue, 371 Fed. Appx. 807, 809 (9th Cir. 2010) ("the ALJ is not required, as a matter of law, to include all the limitations from the impairments the ALJ deems to be severe at step two in the ALJ's final RFC analysis."); Butler v. Comm'r of Soc. Sec., Civ. No. 16-500, 2017 WL 2834482, at *8 (N.D.N.Y. June 29, 2017) ("It is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence."). Moreover, although the ALJ did not adopt Dr. Rolón's opinion that Plaintiff was limited to fingering and handling only occasionally, he still included manipulative limitations in the RFC that he was limited to handling and fingering only frequently. Tr. 27.

Plaintiff also argues that the ALJ's physical RFC determination is not supported by substantial evidence because no medical opinion was assigned significant weight. ECF No. 16, at 23. "An ALJ's lack of assigning significant or great weight to any medical opinion, alone, is not grounds for remand." Arnone v. Saul, Civ. No. 20-750, 2021 WL 963482, at *5 (M.D. Penn. Mar. 15, 2021). However, "[s]ome courts have held that if an [ALJ] gives only little weight to all the medical opinions of record, the [ALJ] creates an evidentiary gap that warrants remand." Major v. Saul, Civ. No. 19-1500, 2020 WL 5793468, at *11 (D. Conn. Sept. 29, 2020) (citations omitted); Kurlan v. Berryhill, Civ. No. 18-62, 2019 WL 978817, at *3 (D. Conn. Feb. 28, 2019) ("Because [the ALJ] gave little to no weight to all of the medical opinions, however, the ALJ had a duty to develop the record and obtain relevant medical opinions before making the RFC assessment.").

In the case at hand, the ALJ did not create an evidentiary gap in the record because she assigned partial weight to the opinions of Dr. Pérez and Dr. Rolón. Tr. 29; Dinapoli v. Berryhill, Civ. No. 17-676, 2019 WL 275685, at *3 (W.D.N.Y. Jan. 22, 2019) ("The fact that the ALJ gave no more than partial weight to the two opinions of record concerning plaintiff's physical condition does not create the 'evidentiary gap' claimed by plaintiff."); Gentile v. Saul, Civ. No. 19-1479, 2020 WL 5757656, at *9-10 (D. Conn. Sept. 28, 2020) (explaining that an evidentiary gap was not present in the record where the ALJ did not assign significant weight to any medical opinion but assigned partial weight to two medical opinions.). The ALJ's physical RFC determination is supported by substantial evidence.

**D. The ALJ's Step Five Determination**

Lastly, Plaintiff alleges that the ALJ erred at step five by finding that there was work that he could perform existing in significant numbers in the national economy. ECF No. 16, at 27. At step five, the ALJ evaluates whether a claimant's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). Plaintiff claims that the hypothetical questions that were posed by the ALJ to the vocational expert ("VE") "did not adequately or accurately depict all of [his] limitations." ECF No. 16, at 27. As stated earlier, substantial evidence supports the ALJ's RFC determination and Plaintiff cannot rehash his RFC argument at this final step. See Gallant v. Berryhill, Civ. No. 16-308, 2017 WL 2731303, at *7 (D. Me. June 25, 2017). The ALJ provided an accurate hypothetical to the VE, and thus, the step five determination is supported by substantial evidence. See Berríos-López v. Sec'y of Health and Human Servs., 951 F.2d 427, 429 (1st Cir. 1991) ("The ALJ was entitled to credit the vocational expert's testimony as long as

there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert.").

## IV. Conclusion

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2021.

s/Marcos E. López<br>U.S. Magistrate Judge